F. Richard Ruderman (SBN 142226)
rick@rudermanknox.com
Christian M. Knox (SBN 171780)
christian@rudermanknox.com
Colleen A. Snyder (SBN 274064)
colleen@rudermanknox.com
Ruderman & Knox, LLP
1300 National Drive, Suite 120
Sacramento, CA 95834
Telephone: 916-563-0100
Facsimile: 916-563-0114

Attorneys for Student

UNITED STATED DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.N. and T.T.,<br><br>Plaintiffs,<br><br>vs.<br><br>MOUNTAIN VIEW-LOS ALTOS UNION HIGH SCHOOL DISTRICT,<br><br>Defendant. | CASE NO.: Unassigned<br><br>**COMPLAINT FOR RELIEF UNDER:**<br><br>1. **The Individuals with Disabilities in Education Act (20 U.S.C. 1400 et seq.)**<br><br>2. **Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 749, et seq.)**<br><br>3. **Title II of the Americans with Disabilities Act (42 U.S.C. § 12132)**<br><br>**TRIAL BY COURT REQUESTED** |

## **JURISDICTION**

1. This Court has original jurisdiction over the federal claims within this complaint pursuant to 28 U.S.C. § 1331.

## **VENUE**

2. Venue is proper in this Court under 28 U.S.C. § 1391(b).

3. Plaintiff T.T. resides within the Northern District of California. At all relevant times during the events that form the basis of this Complaint, N.N. also resided with T.T. within the

Northern District of California.

4. Defendant Mountain View-Los Altos Union High School District is a public entity located within the Northern District of California.

**DEMAND FOR TRIAL BY COURT**

5. Plaintiffs demand a trail by court pursuant to Federal Rule of Civil Procedure 38(b).

**PARTIES**

6. **Plaintiff N.N.** is an eighteen-year-old young woman who was enrolled and attended school in the District through the 2017-2018 school year. At all times relevant to the dispute forming the basis of the claims herein, N.N. was entitled to the legal rights and remedies set forth in the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq., and qualified for protections under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

7. **Plaintiff T.T.** is N.N.'s mother and possessed sole legal custody of N.N. prior to her eighteenth birthday. At all relevant times T.T. resided within the boundaries of the Defendant Mountain View-Los Altos Union High School District.

8. **Defendant Mountain View-Los Altos Union High School District** (the "District") is a public education agency organized and existing under the laws of the State of California and located within Santa Clara County. The District receives federal financial assistance for its educational programs.

**BASIS OF THE DISPUTE**

9. This lawsuit is both an appeal under the Individuals with Disabilities Education Act ("IDEA") from an adverse, incomplete, and incorrect decision by an administrative law judge with the California Office for Administrative Hearings and an action against the District for its discrimination against N.N. as a student with a disability under Title II of the Americans with Disabilities Act ("Title II") and Section 504 of the Rehabilitation Act of 1973 ("Section 504").

10. N.N. was diagnosed with anxiety during the fall of her sophomore year in the District. Although the District offered N.N. an accommodations plan under Section 504, no

assessment was conducted to determine the nature or extent of her disabling condition and/or its impact on her ability to meaningfully access her education.

11. The District failed to provide N.N. with reasonable and appropriate accommodations to enable her to meaningfully access her education.

12. Moreover, the District failed to identify N.N. as a student eligible for special education under the IDEA and failed to offer her an individualized education program, or "IEP."

13. On March 18, 2020, N.N.'s mother, T.T., filed the underlying due process complaint with the Office of Administrative Hearings ("OAH") under the IDEA. A true and correct copy of the due process complaint, redacted only as necessary to protect N.N.'s privacy, is attached hereto as "Exhibit 1."

14. Administrative law judge ("ALJ") Ted Mann heard the complaint during June and July 2020, and issued a decision on August 28, 2020. A true and correct copy of the administrative decision is attached hereto as "Exhibit 2."

15. ALJ Mann held that the District did not deny N.N. a free appropriate public education under the IDEA during the 2018-2019 or 2019-2020 school years, because he determined that she was not eligible for special education.

16. The ALJ failed to determine one of the main issues raised in the Complaint, specifically, the allegation that the District had failed to identify N.N. as a student eligible for special education during the 2017-2018 school year.

17. The ALJ also failed to consider all of the evidence presented in the hearing in reaching his decision, specifically documentary evidence and testimony from N.N.'s teachers, administrator, therapist, and T.T. regarding her needs during the 2017-2018 school year, and documentary evidence and testimony from the wilderness program and residential treatment center staff regarding her needs during August and September 2018.

18. The ALJ also improperly prevented Student's expert witness from testifying regarding N.N.'s needs and the adequacy of the District'

19. In determining that N.N. did not require special education services in order to meaningfully access her education as of September 2018, the ALJ ignored relevant facts and misapplied

20. The ALJ's Decision was incomplete. The issues he did consider were devoid of any analysis. Given that the Decision was neither thorough nor careful no deference should be granted to it by this Court.

21. For these reasons, set forth more thoroughly herein, Plaintiffs appeal and seek reversal of the ALJ's decision, and a determination by this Court that the District denied N.N. a free appropriate public education during the 2017-2018, 2018-2019, and 2019-2020 school years, including extended school years, by:

    **A.** failing to identify her as a student eligible for special education and offering her an appropriate individualized education program;

    **B.** failing to timely respond to T.T.'s May 1, 2018 request for assessment;

    **C.** failing to conduct an appropriate psychoeducational evaluation; and

    **D.** failing to offer an IEP with appropriate goals in all areas of need, services, accommodations and modifications, an appropriate placement, and an extended school year program and services.

22. Plaintiffs also seek a determination that the ALJ erred in excluding evidence from the hearing, in particular the testimony of Student's expert witness Dr. Paula Solomon.

23. By failing to assess N.N., denying her reasonable accommodations necessary to access her educational program as adequately as her non-disabled peers, and denying her meaningful access to the benefits of a public education, the District's actions and omissions also violated Section 504 and Title II of the ADA.

24. As a result of the District's actions, N.N. and T.T. suffered damages and will continue to suffer damages in an amount according to proof.

25. Plaintiffs have exhausted their administrative remedies under the IDEA.

### FACTUAL ALLEGATIONS

26. During the 2016-2017 school year, N.N. was a freshman at Los Altos High School in the District.

27. Although N.N. had previously been a successful student, both academically and socially,

|   |   |   |
|---|---|---|
| 1 |     | she began to struggle with feelings of depression during the spring of 2017. |
| 2 | 28. | N.N. also struggled with work completion and was in danger of failing at least one class during the spring of 2017. |
| 4 | 29. | During May 2017, N.N. disclosed to her mother that she was and had been feeling depressed on and off for years, and was having thoughts of harming herself. She explained that she had left school early after she started to cry in class and was unable to focus. She asked T.T. to help her find a therapist or seek out medication to help with her feelings. |
| 8 | 30. | T.T. immediately sought out private therapy and medical help for N.N. She also reached out to Galen Rosenberg, the vice principal at Los Altos High School, to make the District aware of N.N.'s situation and ask for help. |
| 11 | 31. | Mr. Rosenberg e-mailed N.N.'s teachers to notify them that she had been "going through a very difficult emotional period recently." Although the vice principial shared that community-based counseling was available on campus, no formal offer of services was made. |
| 15 | 32. | During the summer of 2017, N.N. continued seeing her private therapist. |
| 16 | 33. | However, when the 2017-2018 school year began, N.N. continued to struggle emotionally and academically. She shared that she felt overwhelmed by schoolwork and could not keep up with homework. |
| 19 | 34. | On October 5, 2017, T.T. again reached out to Mr. Rosenberg seeking support. |
| 20 | 35. | On October 12, 2017, Mr. Rosenberg, offered to meet in-person with T.T. to discuss N.N.'s "status at Los Altos and consider what kinds of changes would be in her interest." |
| 22 | 36. | On October 18, 2017, T.T. met with Mr. Rosenberg and discussed the possibility of an accommodations plan to allow N.N. additional time to complete work. |
| 24 | 37. | On October 26, 2017, T.T. submitted a letter from N.N.'s doctor stating that N.N. had been diagnosed with anxiety significant enough "that it might require special accommodations in her educational program." |
| 27 | 38. | On November 15, 2017, the District developed a Section 504 accommodations plan for N.N. due to anxiety. Three accommodations were offered: extended time on assignments, |

extra time on tests and test in separate space, and monthly meetings with academic teachers.

39. Mr. Rosenberg testified that the accommodations plan offered was, in his words, "boilerplate."

40. During the meeting, the District recommended that N.N. drop her English class due to a failing grade.

41. No assessment was conducted to inform the District's 504 plan, nor did the District refer N.N. for a special education evaluation under the IDEA.

42. N.N. continued to struggle socially, emotionally, and academically, during the 2017-2018 school year.

43. She was often late to school due to somatic complaints and therapy appointments, left class regularly, and did not complete work.  She began experimenting with alcohol and drugs, in and out of school.

44. Despite N.N.'s decline, the District failed to convene another 504 meeting to review the appropriateness of her accommodation plan, and failed to refer her for an assessment to determine her needs under Section 504 and/or her eligibility for special education under the IDEA.

45. The District failed to provide N.N. with mental health services and/or academic support.

46. By March 2018, N.N.'s mental health had declined to the point that her therapist recommended she enroll in an intensive outpatient treatment program in the community.

47. T.T. shared this information with the District.  However, the District still failed to initiate an assessment, convene a 504 meeting, or offer any additional accommodations or services.

48. Instead, the District recommended N.N. drop another class that she was failing and consider moving to a continuation school for students who were credit deficient.

49. N.N.'s grades had declined to Ds and Fs by this time, and she was experiencing moderate levels of suicidal ideation.

50. In late April 2018, N.N. attempted to run away from home with a friend.

51. N.N.'s therapist recommended that T.T. contact an educational advocate and consider a therapeutic wilderness program in order to motivate N.N. to take responsibility and engage

in therapy.

52. On May 1, 2018, after consulting with an educational advocate and an attorney, T.T. requested an evaluation for special education.

53. T.T. was unaware of the IDEA and her right to request an assessment under the IDEA until she consulted with the advocate and attorney on or around April 30, 2018.

54. The District failed to provide T.T. with an assessment plan within fifteen days, as required by state and federal law.

55. On May 17, 2018, T.T. made the decision to unilaterally place N.N. in a therapeutic wilderness treatment program in Utah.

56. On May 18, 2018, a day after N.N. had left for Utah, the District provided an assessment plan to T.T. for the first time.

57. N.N. received intensive mental health supports at the wilderness program and earned high school credits there.

58. The District proceeded to assess N.N. for special education during July and August 2018.

59. By the time the District's assessment was completed, T.T. had moved N.N. to Explorations, a residential treatment center in Montana, on the advice of the treating psychologist from the wilderness program.

60. In addition to the structure and wraparound nature of Explorations, N.N. received individual therapy, group therapy, family therapy, and individualized academic support.

61. T.T. paid privately for N.N.'s services at Explorations.

62. Explorations enrolled N.N. in the local public high school in Montana. The high school continued N.N.'s 504 plan.

63. With the services provided by Explorations, N.N. stabilized and was able to participate and access her education.

64. In September 2018, the District completed its psycho-educational evaluation and convened an IEP meeting to review the results. The school psychologist who completed the assessment concluded that N.N. presented with a history of experiencing a general pervasive mood of unhappiness or depression, medical diagnoses that impacted her

alertness over time, and an attention processing disorder with a corresponding deficit in the area of reading.

65. Despite her disabling conditions, the District determined that N.N. did not meet criteria for special education because she was attending class and completing work without accommodations or supports.

66. The District did not consider the services provided by the wilderness program and/or Explorations in reaching its decision.

67. T.T. disagreed with the District's conclusion, and obtained an independent psychological evaluation during February 2019, and provided a copy of the report to the District. The independent psychologist opined that N.N. required special education and related services in order to meaningfully access her education.

68. On May 16, 2019, the District convened a second IEP meeting to review the results of the independent evaluation. Again, the District determined that N.N. did not qualify for special education.

69. On March 18, 2020, T.T. filed a due process complaint with the Office of Administrative Hearings ("OAH") under the IDEA. A true and correct copy of the due process complaint, redacted only as necessary to protect N.N.'s privacy, is attached hereto as "Exhibit 1."

70. During June and July 2020, Administrative law judge ("ALJ") Ted Mann heard the due process case, and issued a decision on August 28, 2020. A true and correct copy of the administrative decision is attached hereto as "Exhibit 2."

71. During the hearing, ALJ Mann limited the scope of testimony for Plaintiffs' expert witness.

72. ALJ Mann held that the District did not deny N.N. a free appropriate public education under the IDEA during the 2018-2019 or 2019-2020 school years, because he determined that she was not eligible for special education.

73. The ALJ failed to decide one of the main issues raised in the Complaint, specifically, the allegation that the District had failed to identify N.N. as a student eligible for special education during the 2017-2018 school year.

74. The ALJ denied all Plaintiffs' requests for relief.

## FIRST CLAIM FOR RELIEF

*Denial of a Free Appropriate Public Education under the IDEA (20 U.S.C. § 1400 et seq.)*

75. Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint.

A. **The District Denied N.N. a FAPE by Failing to Identify Her as a Student Eligible for Special Education and Offering Her an Appropriate IEP.**

76. Both the IDEA and California Education Code require the District to actively and systematically seek out, identify, locate, and evaluate all children with disabilities residing within its boundaries who may be in need of special education and related services. 20 U.S.C. § 1412(a)(3)(A); 34 C.F.R. § 300.111(a); see also Cal. Educ. Code § 56300 et seq. This ongoing duty is referred to as the District's "child find" obligation.

77. The "child find" obligation extends to all children "suspected" of having a disability who reside within a district's boundaries. 34 C.F.R. §§ 300.8, 300.111(c)(1).

78. A disability is "suspected" for purposes of child find, "when the district has notice that the child has displayed symptoms of that disability." *Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105, 1119 (9th Cir. 2016).

   i. **2017-2018 School Year**

79. By October 26, 2017, the District was informed of N.N.'s anxiety diagnosis and educational struggles.

80. The District failed to identify N.N. as a student with a suspected disability in need of special education and related services, and failed to refer her for an assessment for special education.

81. The District instead placed N.N. on a 504 accommodations plan and suggested she drop her English class due to a failing grade.

82. The three accommodations offered were insufficient. N.N. required an individualized education program ("IEP") with mental health services and academic support.

83. During February 2018, N.N.'s teachers shared their concerns that she was not completing work, was not engaged, and was leaving class often.

84. These concerns were shared with the school administration, yet the District failed to refer

N.N. for an assessment and/or identify as a student in need of special education.

85. In March 2018, Plaintiffs met with the vice principal and school psychologist at Los Altos High School to discuss N.N.'s enrollment in an outpatient treatment program.

86. Instead of referring N.N. for a special education assessment, the District offered to move N.N. to a continuation school and suggested she drop English for the second time due to a failing grade.

87. During the spring of 2018, N.N. reported suicidal urges of moderate intensity three to four times per week, depressed mood, feelings of extreme hopelessness, and low motivation and energy. She was diagnosed with Major Depressive Disorder, Recurrent, Severe, and Generalized Anxiety Disorder.

88. By May 2018, Dr. Michelle Nutter, the school psychologist that conducted the District's assessment in August and September 2018, described N.N. as "overly defiant at home, disconnected academically, and was not participating or responding in her own treatment program."

89. In her report, Dr. Nutter recognized that N.N. had a "history of experiencing a general pervasive mood of unhappiness or depression" during the 2017-2018 school year. This was supported by the testimony of N.N.'s therapist at the time, N.N.'s self-report that she had "… difficulty attending in class and completing work," teacher concerns shared via e-mail, and the District's assessment of N.N.'s social-emotional functioning.

90. Dr. Nutter also explained that N.N. had a "significant disconnect between the significance of her actions and potential consequences … not entirely uncommon for students with executive functions and impulse control difficulties."

91. Had the District complied with its child find obligation and assessed N.N. during the 2017-2018 school year, the evidence was overwhelming that she would have met eligibility criteria under the categories of other health impairment, emotional disturbance, and specific learning disability.

92. The District's child find violation during the 2017-2018 school year caused a substantive denial of FAPE.

93. N.N. required an individualized education program ("IEP") during the 2017-2018 school year with appropriate goals and services, including academic intervention, mental health services, and eventually, placement in a residential treatment center.

94. Although the Decision recited this issue, including during the 2017-2018 school year, the ALJ failed to decide the issue as to the 2017-2018 school year in his Decision.

95. Further, ALJ Mann erred by preventing Student's expert, Dr. Paula Solomon, from testifying on this subject.

96. Plaintiffs seek a judicial order by this Court that the District denied N.N. a FAPE during the 2017-2018 school year by failing to identify her as a student eligible for special education and offer her an appropriate IEP.

ii. **2018-2019 and 2019-2020 School Years**

97. As described above, the District hired Dr. Michelle Nutter to complete its initial assessment of N.N. during the summer of 2018.

98. On September 18, 2018, the District convened an IEP meeting and decided that N.N. did not meet eligibility for special education.

99. The District determined that N.N. did not meet criteria for eligibility under the category of emotional disturbance because, in Dr. Nutter's opinion, N.N.'s mental health had stabilized since May 2018. The ALJ erred in adopting this conclusion, and ignored relevant evidence from N.N.'s therapist at Explorations, psychologist at the wilderness program, and the results of the District's own assessment.

100. The District's determination that N.N. did not qualify for eligibility under the categories of other health impairment and/or specific learning disability rested on its erroneous conclusion that N.N. was accessing her education on a public high school campus with no accommodations or supports. This was directly contradicted by the evidence presented at hearing.

101. Dr. Nutter admitted that she was unaware that N.N. was receiving intensive mental health services and academic intervention and support at Explorations at the time of her assessment.

11
COMPLAINT FOR RELIEF UNDER IDEA, SECTION 504 AND TITLE II OF ADA

102. Both the District and the ALJ failed to consider these services in their analysis of whether N.N. required special education and related services in order to meaningfully access her education.

103. The ALJ's conclusion that "Student failed to show that either tutoring or counseling were necessary for her to access her education," was contradicted by the evidence presented at hearing, including the testimony of three therapists that treated N.N., the opinion of the psychologist from the wilderness program, and the educational tutor at Explorations.

104. The ALJ's conclusion was also contradicted by the unrefuted evidence of the significant change in N.N.'s ability to access her education from the 2017-2018 school year, before she was sent to the wilderness program and Explorations, to the 2018-2019 school year.

105. In *L.J. by and through Hudson v. Pittsburg Unified Sch. Dist.*, 850 F.3d 996 (9th Cir. 2017), the Ninth Circuit held that a student in a similar situation as N.N., who was receiving therapy and academic and behavioral support at school qualified for special education because the services he received, although not pursuant to an IEP, "were in fact special education supports." *Id*. at 1005.

106. Further, the Ninth Circuit in *L.J.* compared the student's educational access before and after receiving intervention, and concluded that the student's progress "must at least, in substantial part, be attributed to those services." *Id*. At 1006.

107. The ALJ erred by concluding that the services N.N. received at the wilderness program and Explorations were not more than what was provided to general education students.

108. The ALJ ignored the Ninth Circuit's holding in *L.J.*, and failed to consider the undisputed change in N.N.'s ability to access her education from the 2017-2018 school year, when N.N. did not have access to these additional services, and the 2018-2019 school year, when she did.

109. Further, the ALJ erred by preventing Plaintiffs' expert, Dr. Paula Solomon, from testifying as to this subject.

110. Plaintiffs seek a judicial order that the District denied N.N. a FAPE during the 2018-2019 school years by failing to identify her as a student eligible for special education and offer

her an appropriate IEP.

### B. The District Denied N.N. a FAPE by Failing to Timely Respond to T.T.'s May 1, 2018 Request for Assessment.

111. California law requires the District to develop a proposed assessment plan within fifteen calendar days of a referral for assessment. Cal. Educ. Code §§ 56043(a); 56321(a).

112. T.T. requested an assessment from the District on May 1, 2018.

113. The evidence was undisputed that the District did not provide T.T. with an assessment plan until May 18, 2018, and the ALJ concluded that "the assessment plan was three days late."

114. Yet, the ALJ concluded that the District's procedural violation did not result in a substantive denial of a free appropriate public education to N.N. because she was ultimately found ineligible for special education.

115. The ALJ erred in determining N.N. was not eligible for special education, and failed to decide the issue of whether N.N. would have met eligibility criteria had she been assessed during the 2017-2018 school year.

116. Moreover, the ALJ failed to consider the impact the District's delay in developing an assessment plan had on T.T.'s decision to place N.N. in the wilderness program.

117. Although the assessment plan was only three days late, those three days are crucial when considering the timeline of events. Had the District provided T.T. with an assessment plan within fifteen days of her request, T.T. testified that she would not have sent N.N. away to the wilderness program.

118. Had N.N. been evaluated during the spring of 2018, she would have clearly met criteria for special education eligibility.

119. Thus, Plaintiffs seek a judicial determination that the District's failure to provide T.T. with an assessment plan within fifteen days impeded N.N.'s right to a free appropriate public education and denied T.T.'s the opportunity to participate in the formation of N.N.'s IEP in an informed manner. *See* 20 U.S.C. § 1415(f)(3)(E)(ii); Cal. Educ. Code § 56505(j).

**C.     The District Denied N.N. a FAPE by Failing to Conduct an Appropriate Psychoeducational Evaluation.**

120. The IDEA, and its implementing regulations, contain detailed requirements for an initial assessment for special education. 20 U.S.C. § 1414(b)(2)-(b)(3)(B); 34 C.F.R. §§ 300.304(C)-(b)(1), 300.305.

121. Section 300.305 of title 34 of the Code of Federal Regulations, titled "Additional Requirements for Evaluations and Reevaluations," requires the IEP team to review existing data on the child, including classroom-based observations, observations by teachers and related service providers "as appropriate" for the determination of whether a student needs special education and related services.

122. The outcome of the District's evaluation – that N.N. was not eligible for special education – hinged on its conclusion that N.N. was adequately accessing her education in Montana without special education services or supports.

123. Yet, the District failed to include classroom observations or any input from N.N.'s teachers or related service providers in its evaluation.

124. This omission denied the IEP team, including T.T., critical information about N.N.'s educational needs. For example, N.N.'s teachers at Los Altos High School had expressed concern for N.N.'s well-being during the 2017-2018 school year, noted that she left class often for prolonged periods of time, and stopped completing schoolwork.

125. Further, N.N.'s therapist at Explorations testified that, at the time of the District's evaluation, N.N. continued to exhibit symptoms of depression, including anger. He explained that N.N. attempted to mask her feelings early on at Explorations in the hope that she would be allowed to return home. He testified that he believed N.N. required the structure and accountability offered by Explorations, therapy, and academic support in order to be successful at school.

126. The tutor at Explorations also had highly relevant input that supported N.N.'s need for special education and related services. She worked with N.N. for approximately two hours per day, four days per week, after school, to assist her with organization and planning,

editing and revising written work, and facilitated communication with her teachers at school regarding work completion and accommodations.

127. Although these issues were raised by Plaintiffs in both the Complaint and Closing Brief, the ALJ failed to address the District's failure to conduct classroom observations and/or to obtain input from teachers and related services providers in his analysis.

128. The ALJ incorrectly concluded that the District's evaluation was "comprehensive" and that the assessment included "observations of Student."

129. The District's failure to conduct any in-class observations of N.N. and/or obtain information from her teachers and related services providers as part of its assessment undermined its ability to determine whether N.N. required special education and related services, and interfered with T.T.'s right to participate in an informed manner in the IEP process.

130. The ALJ erred by preventing Plaintiffs' expert, Dr. Paula Solomon, from testifying as to this subject.

131. Plaintiffs therefore seek a judicial order that the District's evaluation was inadequate, and that, as a direct result of the inadequacy, N.N. was denied a free appropriate public education.

### D. The District Denied N.N. a FAPE by Failing to Offer an IEP with Appropriate Goals in all Areas of Need, Services, Accommodations and Modifications, and Appropriate placement, and an Extended School Year Program and Services.

132. N.N. required an individualized education program ("IEP") with goals, special education services, and supports, including mental health services and academic intervention, in order to receive educational benefit and make appropriate progress in light of her circumstances.

133. In addition, N.N. required a residential placement in the 2018-2019 school year in order to receive special education and related services. The District's failure to timely address N.N.'s needs in the 2017-2018 school year, in significant part, contributed to her need for a more intensive program in the 2018-2019 school year, including the need for residential placement.

134. Because the District never found her eligible for special education, no IEP was offered.
135. In the absence of an appropriate IEP, T.T. provided private educationally-related services and placement in the wilderness program and Explorations to N.N. at her expense.
136. These private placements were appropriate and necessary to enable N.N. to receive educational benefit and make progress in the areas of mental health and academics.
137. The ALJ's Decision did not reach this issue because he determined that N.N. was not eligible for special education.
138. The ALJ erred by preventing Plaintiffs' expert, Dr. Paula Solomon, from testifying as to this subject.
139. Plaintiffs seek a judicial order that the District denied N.N. a free appropriate public education by failing to offer her an IEP.

## SECOND CLAIM FOR RELIEF

*Violation of § 504 of the Rehabilitation Act of 1973*

140. Plaintiffs incorporate by reference all of the preceding paragraphs above as though fully set forth herein.
141. Plaintiffs are informed and believe, and on that basis allege, that the District is, and at all relevant times was, a recipient of federal funds, and that part of those funds were used in the operations, construction and/or maintenance of the specific public facilities and programs and activities described herein.
142. N.N. is a qualified individual with a disability.  N.N. has mental health conditions that limit her major life activities of inter alia, school performance and social and emotional functioning.
143. By its actions or inactions in denying equal access to educational services, the District discriminated against N.N. by failing to conduct an evaluation to determine her need for special education and related services pursuant to 34 C.F.R. § 104.35.  As a result, the District violated N.N.'s rights under Section 504 of the Rehabilitation Act of 1973.
144. The District also violated Section 504 of the Rehabilitation Act of 1973 by failing to provide an appropriate education (including supports, services, and placement), including

mental health services, academic support, and ultimately, residential placement, pursuant to 34 C.F.R. § 104.33 to allow her to access her education as adequately as her non-disabled peers her during the 2017-2018, 2018-2019, and 2019-2020 school years. As a result, the District violated N.N.'s rights under Section 504 of the Rehabilitation Act of 1973.

145. Furthermore, the District violated Section 504 of the Rehabilitation Act of 1973 by failing to afford N.N. an equal opportunity to participate in or benefit from the aid, benefit, and services provided by a public education in violation of 34 C.F.R. § 104.4. As a result, the District violated N.N.'s rights under Section 504 of the Rehabilitation Act of 1973.

146. The discrimination described herein violated Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 749, et seq.), which provides that "no otherwise qualified individual with a disability shall, solely by the reason of her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance."

147. The District was aware of the severity of N.N.'s disability, and the impact her disabling condition had on her ability to participate in and benefit from her educational program.

148. The District was also aware of N.N.'s need for an assessment, mental health services, academic intervention, and ultimately, residential placement.

149. The District acted with deliberate indifference to N.N.'s rights under Section 504, as described herein, by failing to investigate whether an assessment and/or provision of mental health services, academic intervention and residential placement was possible, and by knowingly failing to provide N.N. with an assessment, mental health services, academic intervention, and residential placement.

150. As a direct and proximate result of the District's discrimination, Plaintiffs suffered damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

*Violation of the Americans with Disabilities Act*

151. Plaintiffs refer to, and incorporate herein by reference, all of the preceding paragraphs as though fully set forth herein.

152. At all relevant times, N.N. was entitled to the protections of the "Public Services" provision of Title II of the Americans with Disabilities Act of 1990 ("Title II"). N.N. is a qualified individual with a disability. N.N. has mental health conditions that limit her major life activities of inter alia, school performance and social and emotional functioning.

153. Title II, Subpart A, prohibits discrimination by any "public entity", including any state or local government, as defined by 42 U.S.C. § 12131, section 201 of the ADA. The District and is such a "public entity" and subject to Title II.

154. Under 42 U.S.C. § 12132, section 202 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity. N.N. was at all times relevant herein a qualified individual with a disability as defined herein.

155. The District was aware of N.N.'s disabling condition and the impact it had on her ability to meaningfully access and participate in her educational program.

156. The District was aware that N.N. required accommodations, specifically mental health services and academic supports, to meaningfully access her educational program.

157. By its actions or inactions in denying equal access to educational services, the District discriminated against N.N. on the basis of disability.

158. The lack of appropriate mental health services and academic supports denied N.N. meaningful access to her education.

159. The District acted with deliberate indifference to N.N.'s rights under Title II, as described herein, by knowingly failing to provide her the supports and services she required to benefit from her education and by failing to even investigate whether mental health services and academic supports were available to accommodate N.N.'s disability.

160. As a result of the District's failure to comply with its duty under Title II, Plaintiffs have suffered damages including special and general damages according to proof.

### FOURTH CLAIM FOR RELIEF

*Legal Fees*

161. Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint.

162. Under the IDEA, Section 504, and the ADA, this Court may award reasonable attorneys' fees to a prevailing party who is the parent of a student with a disability.

163. Plaintiffs seek a finding by this Court that they are the prevailing party in this case. As such, Plaintiffs are entitled to payment of their reasonable attorneys' fees from the District for the fees related to the underlying administrative hearing and this action.

164. Plaintiffs seek a finding that they are entitled to reimbursement of their reasonable legal fees in an amount to be determined by this Court after resolution of the issues herein.

### REQUEST FOR RELIEF

Plaintiffs respectfully request the following relief:

a. Reversal of the ALJ's decision, and a determination by this Court that the District denied N.N. a free appropriate public education under the IDEA during the 2017-2018, 2018-2019, and 2019-2020 school years, including extended school years, by:
   i. failing to identify her as a student eligible for special education and offering her an appropriate individualized education program;
   ii. failing to timely respond to T.T.'s May 1, 2018 request for assessment;
   iii. failing to conduct an appropriate psychoeducational evaluation; and
   iv. failing to offer an IEP with appropriate goals in all areas of need, services, accommodations and modifications, an appropriate placement, and an extended school year program and services.

b. Special and compensatory damages to Plaintiffs for the costs of private services and placement provided to N.N., including transportation costs, in an amount according to proof;

c. An award of costs, disbursements, and reasonable attorneys' fees and expenses; and

d. Such other and further relief as this Court may deem just and proper.

DATED: November 13, 2020                                   RUDERMAN & KNOX, LLP


                                                           /s/ Colleen A. Snyder
                                                           COLLEEN A. SNYDER
                                                           Attorneys for Plaintiffs